## WILLIS v. SEMMES ET AL.

[71 South. 865.]

1. MUNICIPAL CORPORATIONS. *Use of streets. Runaway teams. Presumptions. "Accompany."*

   When someone is occupying the vehicle to which runaway horses are hitched, then no presumption of negligence arises from the fact that the horses are running away. But, the contrary rule seems to prevail when a runaway team is accompanied by one in charge of the same.

2. RUNAWAY TEAMS. *Presumptions. "Accompany."*

   In a suit for damages caused by a runaway team in the streets of a city, it cannot be said that the fact that a small boy who appeared to have been the driver of a runaway team was running upon the sidewalk was in charge of or accompanying the team in such sense as to rebut the presumption of negligence. In order to accompany the team in the sense meant by the authorities upon this subject, the fact should appear that the driver or person was in the wagon or in such position as to show that when the runaway started he was actually in control of the team or had hold of the reins.

APPEAL from the circuit court of Lauderdale county.
HON. J. L. BUCKLEY, Judge.

Suit by Mrs. N. N. Willis against John M. Semmes, Jr., and others. From a judgment on peremptory instructions for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Fewell & Cameron,* for appellant.

*Cochran & McCants,* for appellees.

SYKES, J., delivered the opinion of the court.

The appellant here, plaintiff in the court below, filed suit in the circuit court of Lauderdale county for damage against the appellees for the sum of ten thousand

dollars for personal injuries alleged to have been sustained by her on or about the 15th day of February, 1913, in the city of Meridian,

The testimony for the plaintiff in the court below showed that in the early part of the night of the above-mentioned date the plaintiff, in company with her daughter-in-law, alighted from a West End street car at Fifth street and Twenty-Third avenue, and started toward the sidewalk, when some one hollered, "Look out for a runaway horse!" The appellant's daughter-in-law arrived at the sidewalk in safety, but the appellant, who was an old lady of about sixty-nine years of age, in the confusion of the moment was unable to escape, and was struck and run over by a runaway horse hitched to a wagon, in which wagon there was no one whatever. The wagon was the delivery wagon of the defendants. It appears from the testimony that while the horse was running away in the street a small boy, who evidently must have been driving the wagon at some period before the horse ran away, was running along on the sidewalk hollering to people to look out for the runaway horse, and apparently was trying to overtake the horse. The plaintiff sustained severe personal injuries which it is unnecessary for us to discuss in this opinion.

After the introduction of the testimony for the plaintiff, upon a motion by the defendants, the testimony was excluded, and the jury peremptorily instructed to return a verdict for the defendant. This was done, and judgment was rendered thereupon, from which judgment this appeal is prosecuted.

The only question presented to the court for decision is whether or not the proof of the fact that the horse was running away with no driver or no one else in the wagon or on the ground holding the reins was sufficient to make out a *prima facie* case of negligence against the defendants. This is the first time that this question has been presented to this court for decision. It is a well-known fact that by virtue of their training horses are not in the

habit of running away when there is some one in charge
of the vehicle to which they are harnessed. The weight
of authority seems to be that, when some one is occupy-
ing the vehicle to which runaway horses are attached,
then no presumption of negligence arises from the fact
that the horses are running away. But the contrary rule
seems to prevail when a runaway team is unaccompanied
by one in charge of the same. This rule is well stated in
R. C. L. vol. 1, par. 52, p. 1108, as follows:

"Much has been said as to the presumption of negli-
gence arising from the mere fact that a horse ran away,
some authorities holding that, in the absence of a suit-
able explanation, neglect on the part of the owner or
driver is fairly inferable from such a circumstance alone,
while other courts maintain that from such an occurrence
want of care cannot be presumed, but that, as the burden
of proof of negligence rests on the plaintiff, he must
show something more clearly and positively negligent in
character before he can sustain an action. An analysis
of the cases, however, tends to the conclusion, which is
apparently supported by the weight of authority, that
negligence is *prima facie* imputable to the owner when a
team is found running away unattended on a public high-
way, and damage results to one lawfully thereon, but that
no such inference is legitimately deducible where a horse
is running away with his driver. In the former case the
maxim *res ipsa loquitur* is applied; as the common ex-
perience of mankind proves that horses which are well
broken and kept under control will not, save in excep-
tional cases, break away from the one in charge of them
and inflict injury. Therefore the fact that a horse is run-
ning away unattended would seem to afford some evidence
that it was not properly cared for, or had been left un-
fastened or improperly and negligently secured, none
of which inferences can be reasonably drawn as to a horse
running away with its driver. But in cases of this char-
acter it is well to bear in mind that, whether in the parti-
cular jurisdiction the bare fact that a horse ran away is,

or is not, sufficient *prima facie* evidence of negligence, very little in the way of attending circumstances may in any given case be ample to repel or give foundation for the inference."

In many cases it would be impossible for the plaintiffs to prove the negligence of the defendants unless the doctrine of *res ipsa loquitur* was applied. Yet it is quite an easy matter for the owner of a runaway team to rebut this testimony by showing that the runaway was not the result of negligence. This testimony is peculiarly within the knowledge of the owner of the team and his employees. *Gorsuch* v. *Swan*, 109 Tenn. 36, 69 S. W. 1113, 97 Am. St. Rep. 836.

It cannot be said that the fact that the small boy who appears to have been the driver of the runaway team was running upon the sidewalk was in charge of or accompanying the team in such sense as to rebut the presumption of negligence. In order to accompany the team in the sense meant by the authorities upon the subject, the fact should appear that the driver or person was in the wagon or in such position as to show that when the runaway started he was actually in control of the team or had hold of the reins.

*Reversed and remanded.*